IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROMANO WOODS DIALYSIS CENTER, | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1125 |
| | § | |
| ADMIRAL LINEN SERVICE, INC., | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case, filed under the Employee Retirement Income Security Act ("ERISA"), is before the Court on cross-motions for summary judgment. Defendants Admiral Linen Service, Inc. ("Admiral") and Group & Pension Administrators Inc. ("GPA") filed a Motion for Summary Judgment [Doc. # 51], to which Plaintiff Romano Woods Dialysis Center ("Romano") filed an Opposition [Doc. # 56], and Defendants filed a Reply [Doc. # 57]. Plaintiff filed a Motion for Summary Judgment [Doc. # 53], to which Defendants filed a Response [Doc. # 55] and Objections to Plaintiff's Summary Judgment Evidence [Doc. # 54]. Plaintiff neither filed a Reply nor requested an extension of the reply deadline.

The Court has carefully reviewed the full record and the applicable legal authorities. Based on this review, the Court **grants** Defendants' Motion for Summary Judgment and **denies** Plaintiff's Motion for Summary Judgment.

## I.   BACKGROUND

Romano is a medical provider of dialysis treatments. Beginning in 2012, Romano administered regular dialysis treatments to Leanna Guggenmos, an employee of Admiral who is covered by Admiral's Welfare Benefit Plan (the "Plan").[1] Admiral is the Plan Administrator, and GPA is the Claims Administrator for the Plan. In November 2012, GPA contracted with Specialty Care Management, L.L.C. ("Specialty Care") to assist in processing Guggenmos's claims for reimbursement for the treatments she received at Romano's dialysis center.

Romano alleges that, under the terms of the Plan, Guggenmos is entitled to reimbursement for all medical expenses incurred as part of her dialysis treatment. Romano has sought payment from Defendants for that amount, and claims that it has been underpaid by $1,363,344.00. Defendants assert that, under the terms of the Plan, reimbursement for medical expenses for Guggenmos's dialysis treatments is based on

---

[1]   The Plan Document and Summary Plan Description is attached to Defendants' Motion for Summary Judgment as Exhibit 5 and to Plaintiff's Motion for Summary Judgment as Exhibit E-1.

the Medicare reimbursement rate.  Defendants reimbursed Romano at 125% of the allowable Medicare rates.

Romano argues also that a Single Case Agreement negotiated in October 2012 applies and requires that Romano be reimbursed 65% of billed charges.  Defendants respond that the Single Case Agreement is limited by its terms to the period of time between June 25, 2012 and October 31, 2012.[2]

Romano filed this lawsuit asserting ERISA claims for benefits, breach of fiduciary duty, and interference with ERISA rights.  On motion of Defendants, the Court dismissed the breach of fiduciary duty and interference with ERISA rights claims.  *See* Memorandum and Order [Doc. # 20], entered July 15, 2014.  The parties have now filed Motions for Summary Judgment on the ERISA claim for benefits.  The Motions have been fully briefed and are ripe for decision.

## II.   LEGAL STANDARDS FOR ERISA CLAIMS FOR BENEFITS

### A.   Section 502

Plaintiff's remaining claim is asserted pursuant to 29 U.S.C. § 1132(a)(1)(B) ("§ 502") to recover benefits due under the ERISA plan.  "ERISA section 502(a)(1)(B) empowers a plan participant to sue 'to recover benefits due him under

---

[2]   The Single Case Agreement, memorialized by a letter dated October 26, 2012, is attached to Defendants' Motion for Summary Judgment as Exhibit 1 and to Plaintiff's Motion for Summary Judgment as Exhibit I.

the terms of the plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the plan.'" *North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 194 (5th Cir. 2015) (quoting 29 U.S.C. § 1132(a)(1)(B)).  "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Ins. v. Davila*, 542 U.S. 200, 210 (2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *Hamann v. Indep. Blue Cross*, 543 F. App'x 355, 357 (5th Cir. 2013); *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 600 (N.D. Tex. 2014).

### B.    Review of Plan's Decision

When hearing complaints by ERISA plan members or their assignees for the denial of benefits, this Court serves an appellate role.  *See McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 456 (5th Cir. 2014).  As a result, the Court's "latitude in that capacity is very narrowly restricted by ERISA and its regulations, as interpreted by the courts of appeals and the Supreme Court."  *Id.* at 456-57.

Where, as here, the language of the plan "grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."  *Id.*  A finding of abuse of discretion is appropriate only when "the plan administrator acted arbitrarily or

capriciously." *Id.* "A decision is arbitrary if it is made without a rational connection between the known facts and the decision." *Id.* "Ultimately, a court's 'review of the [Plan] administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness -- even if on the low end.'" *Id.* The Court may not substitute its own judgment for that of the plan administrator. *Id.* at 457-58. The administrator's authority to interpret the terms of the plan includes the power to resolve ambiguities contained within the plan. *See High v. E–Systems Inc.*, 459 F.3d 573, 579 (5th Cir. 2006).

A conflict of interest exists when the plan administrator both evaluates the benefit claims and pays benefits under the ERISA plan. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Wade v. Minn. Life Ins. Co.*, 29 F. Supp. 3d 891, 895 (S.D. Tex. 2014). This conflict of interest "does not change the standard of review but affects only the amount of deference given under an abuse of discretion standard of review." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 330 n.4 (5th Cir. 2014) (citing *Glenn*, 554 U.S. at 115-19; *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 539 (5th Cir. 2012)). Instead, the conflict of interest is "one factor among many that a reviewing judge must take into account." *Glenn*, 554 U.S. at 116; *Wade*, 29 F. Supp. 3d at 895. The weight given to the conflict-of-interest factor is greater when

the circumstances of the particular case suggest a likelihood that the conflict affected the benefits decision, and is weighted less when "the administrator has taken active steps to reduce potential bias and to promote accuracy." *Glenn*, 554 U.S. at 117.

## III.   ANALYSIS

### A.   Conflict of Interest

The Plan reflects that Admiral is both the Plan Sponsor and the Plan Administrator of the self-funded Plan.  Even though there is a separate, independent Claims Administrator, Admiral interprets the Plan and has ultimate authority for payment of benefits thereunder.  Consequently, there is a conflict of interest that is one factor for the Court to consider when determining whether Admiral abused its discretion when it interpreted the Plan to allow reimbursement of Guggenmos's expenses for dialysis treatment at 125% of the applicable Medicare reimbursement rates.

Although the parties characterize the evidence differently, the evidence is undisputed that Admiral hired GPA to act as Claims Administrator.  There is no evidence that GPA has the type of conflict of interest described in *Glenn*.  GPA has only a contractual relationship with Admiral; it does not make any contributions to the Plan.  Instead, GPA evaluates individual claims on behalf of Admiral, the Plan Administrator.

GPA, as Claims Administrator, hired Specialty Care to review dialysis claims, including Guggenmos's claims.   Specialty Care reviewed the records and recommended that Admiral pay Guggenmos's claims at 125% of the applicable Medicare reimbursement rate.   Romano argues that Specialty Care had a conflict of interest because it was motivated to make decisions that benefit Admiral in order to retain GPA's business.   Romano has presented no evidence that indicates payments for Specialty Care's services had any effect on its recommendations and decisions. The sole fact that Admiral was required to pay for the services of a Claims Administrator and a claim review specialist, *i.e.*, that those entities would not perform services without compensation, does not establish that Specialty Care (or GPA) had a conflict of interest.   Indeed, Admiral's decision to retain unrelated third parties to review Guggenmos's claims for benefits indicates that Admiral took active steps to reduce its own potential conflict and to promote an accurate decision on Guggenmos's claims.   As a result, the conflict of interest created by Admiral serving as both Plan Sponsor and Plan Administrator is "less important (perhaps to the vanishing point)." *See Glenn*, 554 U.S. at 117.   This is particularly true where, as here, the contested issue involves the Plan Administrator's interpretation of Plan terms, not a factual determination regarding Guggenmos's claims.

In conclusion, there is a conflict of interest created by Admiral's position as both Plan Sponsor of a self-funded ERISA plan and Plan Administrator with ultimate power to interpret the terms of the Plan.  Based on the undisputed evidence in this case, however, the conflict of interest factor has minimal importance in determining whether Admiral's interpretation of the Plan was arbitrary and capricious.

**B.**   **Plan Interpretation**

Plaintiff argues that the Plan Administrator's interpretation of the Plan to allow it to reimburse for dialysis treatments based on Medicare reimbursement rates was arbitrary and capricious.  The Plan provides that the "Maximum Allowable Charge(s) will be the *lesser of*:

1.    The Usual and Customary amount;
2.    The allowable charge specified under the terms of the Plan;
3.    The negotiated rate established in a contractual arrangement with a Provider; or
4.    The actual billed charges for the covered services.

Plan, p. 110.

With reference to the third option listed in the Plan, "the negotiated rate established in a contractual arrangement with a Provider," Plaintiff asserts that the parties negotiated and entered into the Single Case Agreement in October 2012, which provided for reimbursement at a discounted rate of 35% off of billed charges.  The Single Case Agreement, however, applies to "claims incurred 6/25/12 through

10/31/12." *See* Single Case Agreement, p. 1.  There is no dispute that Defendants reimbursed Plaintiff at the rate set forth in the Single Case Agreement for the period of time covered by the Agreement.  Defendants' failure to continue paying the rate in the Single Case Agreement after the covered period was neither arbitrary or capricious.

With reference to the first and fourth options, Plaintiff argues that its actual billed charges for Guggenmos's dialysis treatment are the same as the usual and customary amount.  In the "Definitions" section of the Plan, however, it is stated clearly that the term "Usual and Customary" does not necessarily mean the actual charge.  *See* Plan, p. 119.  In the "Major Medical Expense Benefits" section of the Plan, the term "Usual and Customary Amount" is defined as "the usual amount accepted as payment for the same service within a geographic area, and/or the negotiated fee schedule of the preferred from provider organization (PPO)."  *See id.* at 55.  The terms "accepted as payment" and "negotiated schedule" indicate that providers' full charges would not be deemed the "usual and customary amount." Instead, the "Plan Administrator will determine the usual charge for any procedure, service, or supply, and whether a specific procedure, service or supply is customary." *See* Plan, p. 119.  Moreover, the Plan provides that the Plan Administrator may, in its discretion, determine and establish the amount of "Usual and Customary charges" by

using "normative data such as . . . Medicare cost to charge ratios . . .." *Id.* The Plan Administrator's interpretation of the Plan to allow the Plan Administrator to determine and establish "Usual and Customary" charges based on Medicare reimbursement rates is supported by the Plan language and was not arbitrary and capricious.

With reference to the second option, the same "Major Medical Expense Benefits" section of the Plan provides specifically that "Dialysis charges may be subject to Medicare rules and reimbursement rates." *Id.* at 59. The Plan Administrator interpreted this language to permit reimbursement for dialysis charges at rates based on Medicare reimbursement rates, including a rate of 125% of the relevant Medicare rate. That interpretation is not arbitrary or capricious, and was well within the Plan Administrator's reasonable discretion.

## IV.   CONCLUSION AND ORDER

The Plan allows for reimbursement of expenses for Guggenmos's dialysis treatments based on Medicare reimbursement rates. As a result, the decision to reimburse Guggenmos's expenses at 125% of the Medicare rates was not arbitrary, capricious, or an abuse of discretion. It is, therefore, hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 51] is **GRANTED** and Plaintiff's Motion for Summary Judgment [Doc. # 53] is **DENIED**. It is further

**ORDERED** that Defendants shall file any motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), with supporting documentation, by **July 24, 2015**.  Any opposition to the motion for fees must be filed by **August 17, 2015**, and any reply must be filed by **August 24, 2015**.

SIGNED at Houston, Texas, this **30th** day of **June, 2015.**