IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROMANO WOODS DIALYSIS CENTER, | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1125 |
| | § | |
| ADMIRAL LINEN SERVICE, INC., | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case, filed under the Employee Retirement Income Security Act ("ERISA"), is before the Court on the Motion for Attorneys' Fees and Costs ("Motion for Fees") [Doc. # 62] filed by Defendants Admiral Linen Service, Inc. ("Admiral") and Group & Pension Administrators Inc. ("GPA"). Plaintiff Romano Woods Dialysis Center ("Romano") filed a "Consolidated Motion for Reconsideration of Summary Judgment, and Opposition to Motion for Attorneys' Fees and Costs" [Doc. # 64]. Defendants filed a Reply [Doc. # 57] in support of their Motion for Attorneys' Fees and Costs, and a Response [Doc. # 66] in opposition to Plaintiff's Motion for Reconsideration. Plaintiff neither filed a reply in support of its Motion for Reconsideration nor requested an extension of the reply deadline.

The Court has carefully reviewed the full record and the applicable legal authorities. Based on this review, the Court **denies** Plaintiff's Motion for Reconsideration and **grants** Defendants' Motion for Fees.

## I.   BACKGROUND

Romano is a medical provider of dialysis treatments. Beginning in 2012, Romano administered regular dialysis treatments to Leanna Guggenmos, an employee of Admiral who is covered by Admiral's Welfare Benefit Plan (the "Plan").[1] Admiral is the Plan Administrator, and GPA is the Claims Administrator for the Plan. In November 2012, GPA contracted with Specialty Care Management, L.L.C. ("Specialty Care") to assist in processing claims for reimbursement for dialysis treatments, including claims related to Guggenmos's treatments.

Romano filed this lawsuit alleging that, under the terms of the Plan, Guggenmos is entitled to reimbursement -- to the full extent billed -- for all medical expenses incurred as part of her dialysis treatment. Romano sought payment from Defendants of an additional $1,363,344.00. Defendants responded that, under the terms of the Plan, reimbursement for medical expenses for Guggenmos's dialysis treatments was based on the Medicare reimbursement rate. Defendants had paid Romano at a rate of

---

[1]   The Plan Document and Summary Plan Description was attached to Defendants' Motion for Summary Judgment [Doc. # 51] as Exhibit 5, and to Plaintiff's Motion for Summary Judgment [Doc. # 53] as Exhibit E-1.

125% of the allowable Medicare rates, with one limited exception.  In October 2012, the parties negotiated a Single Case Agreement.  Pursuant to that agreement, Defendants reimbursed Romano at a rate of 65% of billed charges for claims incurred between June 25, 2012 and October 31, 2012.

The parties filed Motions for Summary Judgment on Plaintiff's ERISA claim for unpaid benefits.  By Memorandum and Order [Doc. # 61] entered June 30, 2015, the Court denied Plaintiff's Motion for Summary Judgment and granted summary judgment for Defendants.  Defendants filed a Motion for Fees, and Plaintiff filed its Motion for Reconsideration.  These two pending motions are now ripe for decision.

## II.   **MOTION FOR RECONSIDERATION**

### A.   **Applicable Legal Standard**

Plaintiff seeks reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which permits a litigant to file a motion to alter or amend a judgment. FED. R. CIV. P. 59(e).  Reconsideration of a judgment is an "extraordinary remedy that should be used sparingly."  *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Waites v. Lee County, Miss.*, 498 F. App'x 401, 404 (5th Cir. Nov. 26, 2012). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Templet*, 367 F.3d at 479; *Knight v. Kellogg Brown & Root Inc.*, 2009 WL

1471788, at *6 (5th Cir. 2009) (quoting *Templet*, 367 F.3d at 479).   Instead, Rule 59(e) serves the narrow purpose of allowing a party to bring errors or newly discovered evidence to the Court's attention.  *See In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (citing *In re Transtexas Gas Corp*., 303 F.3d 571, 581 (5th Cir. 2002)); *Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll*., 452 F. App'x 495, 499 (5th Cir. 2011).

###   B.   <u>Analysis</u>

Plaintiff argues in its Motion for Reconsideration that Defendants were arbitrary and capricious by reimbursing Plaintiff for Ms. Guggenmos's dialysis treatments at 125% of the Medicare reimbursement rates rather than paying the full rate billed by Plaintiff – a rate that ranged between $4,500.00 and $6,400.00 per treatment.  This is the same argument presented by Plaintiff, and rejected by this Court, at the summary judgment stage.

Plaintiff argues also that Defendants were arbitrary and capricious by declining Plaintiff's "Code 90937" billing for some of Ms. Guggenmos's dialysis treatments. Although Plaintiff had all information necessary to assert this new argument in the summary judgment briefing, it failed to do so.  For purposes of a complete record, however, the Court will address the merits of both arguments.

***Use of Medicare Reimbursement Rates.***   Plaintiff argued in the summary judgment briefing and argues again now that the Plan Administrator's interpretation of the Plan to allow it to reimburse for dialysis treatments based on Medicare reimbursement rates was arbitrary and capricious.   Plaintiff's argument was, and remains, without merit.  The Plan provides that the "Maximum Allowable Charge(s) will be the ***lesser of***:

1.   The Usual and Customary amount;
2.   The allowable charge specified under the terms of the Plan;
3.   The negotiated rate established in a contractual arrangement with a Provider; or
4.   The actual billed charges for the covered services.

Plan, p. 110.

The third option listed in the Plan, "the negotiated rate established in a contractual arrangement with a Provider," applied during, and only during, the term of the Single Case Agreement.   As required by the Single Case Agreement, Defendants reimbursed Plaintiff at the rate of 65% of billed charges for "claims incurred 6/25/12 through 10/31/12."   It was neither arbitrary nor capricious for Defendants' to stop paying the Single Case Agreement rate when the contract period expired.

With reference to the first and fourth options, the Plan clearly and unambiguously states that the term "Usual and Customary" does not necessarily mean

the actual charge billed by the medical provider.  *See* Plan, p. 119.  Instead, the "Plan

Administrator will determine the usual charge for any procedure, service, or supply,

and whether a specific procedure, service or supply is customary."  *See id.*  Moreover,

the Plan provides that the Plan Administrator may, in its discretion, determine and

establish the amount of "Usual and Customary charges" by using "normative data

such as . . . Medicare cost to charge ratios . . .."  *Id.*  The Plan Administrator's

interpretation of the Plan to allow the Plan Administrator to determine and establish

"Usual and Customary" charges based on Medicare reimbursement rates is supported

by the clear Plan language and was not arbitrary and capricious.

With reference to the second option, the Plan provides specifically that

"Dialysis charges may be subject to Medicare rules and reimbursement rates."  *Id.*

at 59.  The Plan Administrator interpreted this language to permit reimbursement for

dialysis charges at rates based on Medicare reimbursement rates.   That accurate

interpretation is not arbitrary or capricious.

**_Reimbursement at Lower Coded Rate._**  Plaintiff argues in the Motion for

Reconsideration that Defendants failed to reimburse it according to applicable

Medicare rates for some of Ms. Guggenmos's dialysis treatments between

November 2012 and June 2013.  This new argument could have been presented during

the summary judgment phase and is not an appropriate basis for reconsideration.

Nonetheless, the Court has considered the new argument and finds it to be without merit.

It is uncontroverted that often a dialysis patient may receive a treatment based on a single evaluation by a healthcare provider, but in some instances the patient requires repeated evaluations during a single dialysis treatment. There is a code number for a treatment involving a single evaluation, and a different code number for a treatment involving multiple evaluations (Code 90937). The allowable charge for a single evaluation treatment is less than the allowable charge for a treatment requiring repeated evaluations.

In this case, Plaintiff sought reimbursement for dialysis treatments under Code 90937, but failed to provide the supporting documentation required for reimbursement under that code number. Indeed, Plaintiff to date has not produced documentation that supports the higher rate Code 90937 billing entries. Between November 2012 and June 2013, Defendants declined Code 90937 billing entries that were not supported by proper documentation. Plaintiff argues that Defendants' decision to decline payment was arbitrary and capricious and notes that, after June 2013, Defendants approved some Code 90937 charges that were not documented. Defendants' decision not to pay higher rates based on unsupported billing entries was not arbitrary or capricious. This is true even though Defendants later decided, in the exercise of their

discretion, to overlook Plaintiff's failure to provide supporting documentation for billings at Code 90937. Defendants' later approval of undocumented use of the Code 90937 does not cause their original requirement for documentation to become arbitrary or capricious.

### C.      Conclusion on Reconsideration Motion

As explained fully in the Court's June 30, 2015 Memorandum and Order, and as repeated herein, the Plan clearly and unambiguously allows Defendants to reimburse Plaintiff at a rate based on Medicare rates. Defendants' decision to reimburse Plaintiff at a rate equal to 125% of applicable Medicare rates was not arbitrary or capricious.

Likewise, it was not arbitrary and capricious for Defendants to require Plaintiff to submit documentation supporting the use of Code 90937 before paying the higher reimbursement associated with that code. Plaintiff's argument on this issue could have been asserted during the summary judgment briefing and, in any event, is without merit.

Plaintiff has failed to demonstrate that the Court's June 30, 2015 ruling constituted a manifest error of law or fact. Having reviewed the record and Plaintiff's new and old arguments, the Court again concludes that Defendants are entitled to

summary judgment on Plaintiff's ERISA claims for allegedly unpaid benefits. The Motion for Reconsideration is denied.

## III.   MOTION FOR FEES

### A.   Applicable Legal Standards

"In any action under [ERISA] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1); *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc*., 703 F.3d 835, 846 (5th Cir. 2013).  The award of costs is subject to the "prevailing party" test.  *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 543 (5th Cir. 2007).  As the prevailing party, Defendants are entitled to recover their taxable costs.

The award of attorney's fees, however, is not limited to the prevailing party. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010).  Rather, the movant must obtain "some degree of success on the merits" in order to recover attorneys' fees.  *See id.* at 255.  In this case, Defendants may be awarded fees because they clearly obtained "some degree of success on the merits," having obtained summary judgment on Plaintiff's claim for allegedly unpaid benefits.

In deciding whether to award fees in an ERISA case, the Court may -- but is not required to -- consider the five factors set forth in *Iron Workers Local No. 272 v.*

*Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).  *See LifeCare*, 703 F.3d at 846 (citing *Hardt*, 560 U.S. at 254-55; *1 Lincoln Fin. Co. v. Metro. Life Ins. Co.*, 428 F. App'x 394, 396 (5th Cir. 2011)).  The five *Bowen* factors are discussed in detail below.

If the Court determines under that movant is entitled to attorney's fees, the Court then applies the lodestar method to determine the amount of fees to be awarded. *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).  "Under this method, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.'"  *Id*.  "The lodestar is then adjusted upward or downward . . . after assessing the dozen factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)."  *Id.*

### B.    *Bowen* Factors

The five *Bowen* factors are: (1) the degree of the opposing party's bad faith or culpability; (2) the opposing party's financial ability to satisfy an award of attorney's fees; (3) whether a fee award may deter others under similar circumstances; (4) whether the party seeking fees "sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;" and (5) the relative merits of each party's position.  *See Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010) (citing *Bowen*, 624 F.2d at 1266).

**_Bad Faith and Relative Merits Factors_**.  In this case, the "bad faith" factor and the "relative merits" factor are closely intertwined.  A party's conduct may rise to the level of bad faith or culpability for purposes of an award of attorneys' fees where it pursues frivolous arguments or claims.  *See Wegner*, 129 F.3d at 821; *Koehler v. Aetna Health Inc.*, 915 F. Supp. 2d 789, 793 (N.D. Tex. 2013).

In this case, Plaintiff's positions (1) that it was entitled to its full billings of almost $1.4 million and (2) that it was arbitrary and capricious for Defendants to base reimbursement rates on applicable Medicare reimbursement rates were frivolous.  The Plan, a copy of which Romano had prior to filing suit, stated clearly and unambiguously that "Dialysis charges may be subject to Medicare rules and reimbursement rates."  Plan, p. 59.  When twice contacted by a Romano Woods representative prior to filing this lawsuit, a GPA employee advised each time that Medicare rates would apply.  Defendants similarly advised Romano in written communications that Medicare rates would apply.  Phia Group, a third party retained pre-suit to review the claims related to Ms. Guggenmos's dialysis treatments, explained clearly and comprehensively why reimbursement at the rate of 125% of the applicable Medicare reimbursement rate was consistent with the Plan terms.  Before this lawsuit was filed, Romano had been advised that its reimbursement for Ms. Guggenmos's dialysis treatments would be subject to Medicare rates.  Also before this

lawsuit was filed, it had been clearly explained to Romano that basing reimbursement rates on applicable Medicare rates was permitted by the Plan.[2]  *See, e.g.,* Phia Group Letter [Doc. # 50-19].

Nonetheless, Plaintiff filed this lawsuit on April 14, 2014.  On September 25, 2014, Defendants produced to Plaintiff's counsel copies of the taped telephone conversations in which GPA's employees advised Romano's representative that Medicare rates would apply.  On December 16, 2014, Caroline Lewis, Romano's corporate representative, was deposed.  In her deposition, Lewis testified that Romano receives the Medicare-based reimbursement rate of approximately $275 per dialysis treatment for approximately 90% of its patients.  Notwithstanding this testimony, and the fact that Defendants were reimbursing Plaintiff at a higher average rate of approximately $365 based on 125% of the Medicare reimbursement rate, Plaintiff persisted in its argument that the Plan required Defendants to reimburse them for the full billed amount of approximately $5,000.00 per treatment.  This litigation position,

---

[2]     The Phia Group explained in the October 15, 2013 letter that the Plan stated that "Dialysis charges may be subject to Medicare rules and reimbursement rates."  The Phia Group in its letter to Plaintiff explained further that the Plan provided that "Usual and Customary charges" were not necessarily those charges actually billed by a Provider, and that the Plan Administrator had discretion under the Plan to establish the amount of "Usual and Customary charges" by using "normative data such as . . . Medicare cost to charge ratios . . .."

particularly in light of the clear and unambiguous Plan language and the testimony of its corporate representative, was frivolous.

Plaintiff also argued that the Single Case Agreement required Defendants to pay the entire billed charges for Ms. Guggenmos's dialysis treatments.  The Single Case Agreement, however, stated clearly that the higher rates would be paid for "claims incurred 6/25/12 through 10/31/12."  Plaintiff's argument that the Single Case Agreement had any effect on reimbursement rates for any time period other than the term stated in the agreement was frivolous.

Notwithstanding undisputed evidence that GPA merely hired Specialty Care to review dialysis claims, Plaintiff argued that Defendants' reimbursement decisions were not entitled to deference because Specialty Care had a conflict of interest.  As noted by the Court in the June 30, 2015 Memorandum and Order:

> Romano has presented no evidence that indicates payments for Specialty Care's services had any effect on its recommendations and decisions. The sole fact that Admiral was required to pay for the services of a Claims Administrator and a claim review specialist, *i.e.*, that those entities would not perform services without compensation, does not establish that Specialty Care (or GPA) had a conflict of interest.  Indeed, Admiral's decision to retain unrelated third parties to review Guggenmos's claims for benefits indicates that Admiral took active steps to reduce its own potential conflict and to promote an accurate decision on Guggenmos's claims.

June 30, 2015 Memorandum and Order [Doc. # 61], p. 7.  Romano's argument regarding Specialty Care's conflict of interest was without merit.

Plaintiff before and throughout this lawsuit has maintained positions, as to both liability and damages issues, that lacked merit, and were in some respects frivolous. As a result, the "relative merits" factor weighs heavily in favor of an award of attorneys' fees to Defendants in this case, and the "bad faith" factor tips that way as well.

***Ability to Satisfy a Fee Award.***  Plaintiff's corporate representative testified in her deposition that Romano treats 75-80 patients per month.  If each patient received the same ten or eleven treatments per month that Ms. Guggenmos received, and if Romano received the $275.00 for each treatment testified to by the corporate representative, Romano has monthly revenue between $200,000 and $250,000. Moreover, Romano was acquired in 2014 by DaVita, one of the largest kidney care companies in the United States.  DaVita's 2014 Annual Report reflects an operating cash flow of $1.459 billion.  Although Romano characterizes itself as a "small dialysis clinic," it has presented no evidence that contradicts the financial information submitted by Defendants.  The Court finds from this uncontroverted evidence that Plaintiff has the ability to satisfy an award of attorneys' fees.

***Deterrence.***  A factor important to the Court is whether an award of attorneys'

fees would deter others in similar circumstances from pursuing frivolous claims and

arguments.  Plaintiff during the pre-suit phase and throughout this litigation sought

to recover the full amount it billed for Ms. Guggenmos's dialysis treatments.  Plaintiff

insisted that it was entitled to recover this full amount, notwithstanding its knowledge

that it recovers significantly less than the full billed amount for at least 90% of its

patients.  An award of attorneys' fees in this case could deter other Plaintiffs from

demanding an exorbitant amount of damages to which they know they are not entitled.

Moreover, the Court finds that an award of attorneys' fees in this case would

promote the fundamental principle that it is important to read the governing contract

carefully and thoroughly.  In this case, as discussed above, the Plan language was

clear and unambiguous.  A careful reading of the operative contract should have

informed Plaintiff that its position in this lawsuit lacking in merit, if not was frivolous.

***To Benefit All Participants or to Resolve Significant Legal Issue.***  In this case,

there is no indication that Defendants were seeking to benefit all participants or to

resolve a significant legal issue.  Instead, Defendants were defending itself against

Plaintiff's frivolous claim for almost $1.4 million in allegedly unpaid bills.

***Conclusion on* Bowen *Factors.***  With the exception of the last factor discussed

above, each of the five *Bowen* factors weighs in favor of an award of attorneys' fees.

C.      **Amount of Fees to Be Awarded**

Plaintiff opposed any award of attorneys' fees to Defendants in this case, but did not assert any objection to the specific amount requested.  Nonetheless, the Court has independently reviewed Defendants' request for attorneys' fees pursuant to the factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) (the *Johnson* factors).[3]  Based on this review, and a clear recollection of the litigation of this lawsuit, the Court finds that the $209,350.13 in attorneys' fees requested by Defendants is reasonable and appropriate.

It is clear from Defendants' billing records that, wherever possible, the majority of the work was performed by those billing at lower rates.  During much of the time the lawsuit was pending, both Defendants were represented by the same law firm.  This prevented double billing for duplicative work being performed by different law firms.

---

[3]      The *Johnson* factors are (1) the time and labor required for the litigation; (2) the novelty and complexity of the issues; (3) the skill necessary to litigate the issues; (4) whether the attorney had to decline other work to focus on the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or the circumstances of the case imposed time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards made to attorneys in similar cases.  *See Johnson*, 488 F.2d at 717-19 (abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

Having reviewed the record, applied the *Johnson* factors, and there being no objection by Plaintiff to the amount requested, the Court finds that $209,350.13 represents the reasonable and necessary attorneys' fees to be awarded to Defendants.

**IV.   CONCLUSION AND ORDER**

Plaintiff has failed to raise any arguments that were not and could not have been raised in the summary judgment briefing.  Moreover, the new argument regarding the failure to pay for the higher rate coded treatments is without merit.  As a result, Plaintiff's Motion for Reconsideration is denied.

Defendants were successful on the merits of this lawsuit and, as a result, are eligible for an award of fees and costs.  Having considered the relevant factors, the Court concludes that Defendants should be awarded reasonable and necessary attorneys' fees in the total amount of $209,350.13.  It is, therefore, hereby

**ORDERED** that Plaintiff's Motion for Reconsideration [Doc. # 64] is **DENIED**.  It is further

**ORDERED** that Defendants' Motion for Attorneys' Fees and Costs [Doc. # 62] is **GRANTED** and Defendants shall recover from Plaintiff their reasonable and necessary attorneys' fees in the total amount of **$209,350.13**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **25th** day of **September, 2015.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE